COMMONWEALTH *vs.* PAUBLINO VILLAR.

No. 95-P-27.

Suffolk. December 4, 1995. - July 19, 1996.

Present: BROWN, SMITH, & JACOBS, JJ.

*Search and Seizure,* Plain view, Consensual entry by police. *Constitutional Law,* Search and seizure. *Controlled Substances. Practice, Criminal,* Required finding.

Police officers who were lawfully present in a hallway outside the defendant's apartment properly made observations of an occupant's possession of cocaine when he and the defendant opened the door at the police officers' knock, and any alleged ruse in the police officers' placing a person known to the occupants in front of the apartment door peephole when they knocked did not result in an illegal entry. [743-747]

The judge at the trial of an indictment for trafficking in cocaine correctly denied the defendant's motion for a required finding of not guilty, where there was sufficient evidence to support a finding beyond a reasonable doubt that the defendant knowingly possessed the cocaine and related paraphernalia found in the apartment in which he was arrested. [747-748]

INDICTMENT found and returned in the Superior Court Department on February 7, 1994.

A pretrial motion to suppress evidence was heard by *Robert W. Banks*, J., and the case was tried before him.

*Arnold P. Cohen* for the defendant.

*Jill P. Furman*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was indicted for trafficking in fourteen or more grams of cocaine and for conspiracy to traffic in cocaine. Prior to trial, the defendant filed a motion to suppress the evidence seized pursuant to a search warrant. After an evidentiary hearing, a Superior Court judge denied the suppression motion. A trial was held on the trafficking

charge only.[1] At the close of the Commonwealth's case and again at the close of all the evidence, the defendant filed a motion for a required finding of not guilty. Both times the judge denied the motion. The jury returned a guilty verdict against the defendant.

On appeal, the defendant argues that the judge committed error in denying his suppression motion and his motion for a required finding of not guilty.

1. *Denial of suppression motion.* The defendant claims that his suppression motion should have been allowed because the search warrant was the "fruit" of a prior, illegal, warrantless search of the' premises. In particular, the defendant argues that the information used by the Commonwealth to establish probable cause for the issuance of the warrant was obtained through the use of an improper ruse by the police.

After a hearing at which two police officers testified, the judge issued a memorandum of decision containing his findings of fact. We summarize relevant portions of the judge's findings.

On January 13, 1994, a police officer assigned to the Boston police department drug unit began following one Tejeda, a suspected dealer in drugs. Tejeda was observed using a key to enter an apartment complex. After a few minutes, Tejeda left the complex. When the officers approached him, he reached into his pocket and brought out six plastic bags of white powder which the officers believed was cocaine. He was placed under arrest, and the police discovered six more bags of cocaine, a beeper, and keys to the apartment complex in his coat pocket.

The police used Tejeda's key to enter the common area of the apartment complex.[2] Once inside, they followed wet footprints, which matched Tejeda's shoes, to apartment 4A. The apartment door had a peephole. A police officer then noticed a telephone number on Tejeda's beeper. In order to verify that apartment 4A was the apartment Tejeda had just visited, the officer radioed headquarters and instructed them

[1] See Mass.R.Crim.P. 9(e), 378 Mass. 861 (1979). The indictment for conspiracy was later placed on file without a change of plea.

[2] The defendant does not· raise as an issue on appeal that the police unlawfully entered the locked common area of the apartment building, and we, therefore, do not consider it. See Mass.R.Civ.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

to call the telephone number that was on Tejeda's beeper. Following that instruction, the telephone in apartment 4A began to ring. The telephone was answered by a Hispanic sounding male.

The officer again requested headquarters to call the telephone number. When the officers heard the telephone in the apartment ring again, they placed Tejeda in front of the peephole in the apartment door. The officers knocked on the door. They did not say anything. Someone opened the door. An individual named Baez stood to the left of the defendant and held several bags of cocaine in his hand. Upon seeing the officers, Baez put the cocaine in his mouth and attempted to swallow it. The officers entered the apartment and forcibly prevented Baez from swallowing the cocaine. They then arrested Baez and the defendant and secured the apartment. A police officer obtained a search warrant using the information obtained by the police when the defendant opened the door. The search pursuant to the warrant resulted in the seizure of cocaine and drug paraphernalia.

At the hearing on his suppression motion, the defendant argued that the police, by placing Tejeda in front of the peephole, used a ruse to have the occupants of the apartment open the door. The use of the ruse, according to the defendant, constituted an unlawful entry, and, therefore, he argued, the police could not seize the cocaine that was in plain view. The defendant claimed further that, because the cocaine seized in the unlawful entry must be suppressed, there was insufficient probable cause to obtain the search warrant, the basis for the subsequent search.

The judge specifically found that when the police placed Tejeda in front of the door and knocked, they did not intend to enter and search the apartment but only wished to speak with the occupants. He ruled that the use of a ruse by the police was proper, and the information they obtained while standing in the hallway and looking through the open door may be used to establish probable cause to obtain a search warrant.

In his analysis of the "ruse" issue, the judge wrote that "Santo Baez observed Tejeda through the peephole and opened the door." However, there was no evidence that Baez, or any other occupant, responded to the knock by looking first through the peephole, seeing Tejeda, and then opening

the door. Rather, the evidence showed that the police knocked on the door, said nothing, and the door opened in response to the knock. Therefore, if we assume that placing Tejeda before the peephole was a ruse, there was no evidence that the door was opened as a result of the use of the ruse. A defendant must show that he responded to the use of a ruse in order to claim improper police conduct in using a ruse. Mere use of a ruse, by itself, would not amount to police misconduct.

The police conduct in approaching the door and knocking on it was proper. *Commonwealth* v. *Acosta,* 416 Mass. 279, 282 (1993)(a police officer "did no more than any citizen could do by entering a common area and knocking on the door"). Here, the police knocked on the door and said nothing. Further, they did not invoke their authority to have the door opened. Compare *Commonwealth* v. *Acosta, supra,* where the officer did not announce himself as a police officer, and *Davis* v. *United States,* 327 F.2d 301, 303-305 (9th Cir. 1964) (no "search" where police knocked but did not invoke authority as police to command entry), with *Commonwealth* v. *Hamilton,* 24 Mass. App. Ct. 290, 292-295 (1987) (where search began when police compelled the defendant to open door by announcing police presence).

Once the defendant opened the door, the police observed in Baez's possession four packages of white powder which the officers believed to be cocaine. Their plain view observation obtained from a common hallway did not constitute a search. *Commonwealth* v. *Figueroa,* 412 Mass. 745, 749 & n.6 (1992). The incriminating nature of the drugs was readily apparent. See *Commonwealth* v. *Santana,* 420 Mass. 205, 211 (1995). Because the police were lawfully present outside the defendant's apartment when they observed the drugs and in view of Baez's attempt to destroy the evidence, the seizure of the cocaine was valid. *Commonwealth* v. *Martino,* 412 Mass. 267, 276 (1992).

Further, even if we assume that the judge's inference is correct that Baez observed Tejeda through the peephole before he opened the door, the use of a ruse would not make the seizure of the cocaine illegal or invalidate the search warrant in the circumstances here.

The police have been permitted to employ a ruse to gain entry into a defendant's home in certain situations. In *Commonwealth* v. *Goggin,* 412 Mass. 200, 201-203 (1992), the po-

lice went to the defendants' apartment to execute a search warrant. The warrant required the officers to knock and announce their identity before entering. A police officer knocked on the door and, when a voice answered, "Who is it," he responded, "Pop Warner." When no one responded to the officer's answer, again the officer knocked on the door and answered in response to an inquiry, "Somerville Pop Warner." One of the defendants opened the door, and, before stepping into the apartment, the police announced their identity, authority, and purpose. The court held that the use of the "Somerville Pop Warner" ruse by the police to have the door opened was not improper. "A consensual entry by the police, even if obtained by ruse or trickery, will not violate the [knock and announce] rule." *Id.* at 202. Accord *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 182-183 (1989).[3] Further, the police may use a ruse for the purpose of gaining consensual access to places where they would not otherwise be allowed if their official status were known. *Lewis* v. *United States*, 385 U.S. 206, 209, 210 (1966) ("the Government is entitled to use decoys and to conceal the identity of its agents").

A successful ruse that did not involve obtaining the consent of an occupant of a dwelling was upheld in *United States* v. *Rengifo*, 858 F.2d 800 (1st Cir. 1988), in which the police had a Colombian vessel and its occupants under surveillance for possible involvement in narcotics distribution. Ultimately, the police used a ruse to get the suspects in the narcotics investigation to leave their motel room. A police officer placed a call to the motel room sometime after 2:00 A.M. and, without identifying himself, informed the person who answered the phone that things had gone wrong at the vessel, that people had been arrested, and that it would be best if they left the area. Almost immediately after the phone call, the motel door opened, and the occupants started to leave.

[3]In another Massachusetts case, *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 252-253 (1982), the police decided to stage a false fire in order to lure the defendant out of his apartment so that they could arrest him without a warrant. The defendant argued that since he was only induced to leave his home by the police ruse, his arrest should be analyzed as a warrantless arrest in his home.

The court found it unnecessary to decide the matter because it concluded that even if the arrest was analyzed as a warrantless arrest in the defendant's home, it was justified by exigent circumstances. *Id.* at 253-257.

The police apprehended the occupants and, without a warrant, placed them under arrest and entered the motel room. *Id.* at 802-803. The defendants claimed that the use of a ruse to get them to open their motel door and flee was an attempt to evade the requirement for an arrest warrant by artificially creating exigent circumstances. The court disagreed and held that this was a "creative investigative effort and simply an example of good police work." *Id.* at 803-804. The court pointed out that exigent circumstances do not excuse the failure to obtain a warrant when the circumstances are created by government agents who unreasonably and deliberately delay or avoid obtaining the warrant. However, because the officers did not have probable cause to arrest prior to the call, the court stated, the police were not using the ruse to avoid the requirement of an arrest warrant.

Similarly, here, the actions of the police did not result in an illegal entry, and the information contained in the affidavit supporting the search warrant was lawfully obtained.

2. *Denial of defendant's motion for required finding of not guilty.* The defendant argues that there was insufficient evidence to prove that he knowingly possessed the twenty-six bags of cocaine and drug-related paraphernalia found in apartment 4A.[4]

The defendant's personal papers and clothing were found in various locations in the apartment. The Commonwealth introduced in evidence an unnegotiated (and unsent) rental check, dated January 3, 1994, written by the defendant to his landlord, in the amount of $500, the amount of the monthly rent. He also had possession of keys to the apartment and to the common area. It was the defendant who opened the door to the apartment when the police knocked, indicating control over who would be admitted or denied entrance to the premises. When the defendant opened the door, he was standing next to the person who was holding several bags of cocaine in his hand. In addition, cocaine and paraphernalia were found on a shelf in the kitchen and were not hidden. The defendant testified that cooking items in the kitchen were his. "[O]ne who occupies an apartment ordinarily uses, and is fa-

---

[4]The defendant does not address the adequacy of the Commonwealth's proof on the quantity or distribution elements of the offense. Therefore, these issues are waived on appeal. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Commonwealth* v. *Good*, 409 Mass. 612, 617 (1991).

miliar with, contents of the apartment's kitchen." *Commonwealth* v. *Rivera,* 31 Mass. App. Ct. 554, 557 (1991). The police also found an electronic beeper, which the defendant admitted was his. There was evidence by the Commonwealth that such beepers are used in the distribution of narcotics. Finally, a man's leather jacket, which the jury could infer belonged to the defendant, was found in the living room closet with $879 in the pocket.[5] Therefore, the trial judge properly denied the defendant's motion for a required finding of not guilty.

*Judgment affirmed.*

---

[5]The jacket was size 38 or 40 regular and would not have fit Baez or Tejeda, who were much bigger and heavier than the defendant, although it could also have fit another occupant.