## COMMONWEALTH *vs.* JUAN DeJESUS.

Essex. April 8, 2003. - June 24, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Probable cause, Exigent circumstances, Securing of premises, Affidavit. *Probable Cause. Evidence,* Informer. *Practice, Criminal,* Motion to suppress.

A Superior Court judge properly determined that an initial warrantless entry by police officers and the subsequent search of the criminal defendant's apartment for occupants was not permissible where, although the police officers clearly had a right to control the premises from the outside until a search warrant was obtained, they had no basis for believing that immediate entry was necessary to prevent the destruction of evidence, absent any indication whatsoever that the dwelling was occupied at the time; and where an officer easily could have been stationed at the door to secure the apartment while another proceeded to obtain a warrant. [619-621, 622-624]
This court concluded that police officers who secure a dwelling while a warrant is being sought in order to prevent destruction or removal of evidence may not enter that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken. [621-622]
A Superior Court judge erred in excluding evidence seized from the apartment of a criminal defendant during a search conducted pursuant to a warrant that had been issued based upon an affidavit describing cocaine and drug paraphernalia observed in plain view by police officers during the course of an initial illegal warrantless entry of the apartment where, after striking from a supporting affidavit a reference to the drugs and paraphernalia observed during the initial illegal search, the cumulative information remaining in the affidavit provided probable cause to believe that the cocaine and implements used for cocaine distribution would be found in the defendant's apartment. [624-628]

INDICTMENTS found and returned in the Superior Court Department on May 19, 1999.

A pretrial motion to suppress evidence was heard by *Peter F. Brady*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the

Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further review.

*James Janda,* Assistant District Attorney (*Gerald P. Shea,* Assistant District Attorney, with him) for the Commonwealth.

*Ivan Mercado* (*Alexandra Rengel* with him) for the defendant.

GREANEY, J. The Commonwealth appealed from an order entered in the Superior Court suppressing evidence seized by the police during a search of the defendant's apartment. The search was conducted pursuant to a warrant issued, in part, on a description of cocaine and drug paraphernalia observed by police officers during a prior warrantless "protective sweep" of the apartment following the defendant's arrest.[1] After an evidentiary hearing, the judge entered a memorandum of decision and order in which he ruled that the evidence must be suppressed because no exigent circumstances excused the officers' failure to obtain a search warrant prior to their initial entry into the defendant's apartment. A single justice of this court granted the Commonwealth leave to file an interlocutory appeal and transmitted the matter to the Appeals Court. See Mass. R. Crim. P. 15 (a)(2), as appearing in 422 Mass. 1501 (1996). A divided panel of the Appeals Court concluded that the judge had ruled correctly and affirmed the order allowing the motion to suppress. See *Commonwealth* v. *DeJesus,* 56 Mass. App. Ct. 523 (2002). We granted the Commonwealth's application for further appellate review and, for reasons that follow, we now reverse the order suppressing the Commonwealth's evidence.

1. We relate the facts as found by the judge, supplemented by uncontroverted evidence presented at the hearing. On March 29, 1999, the defendant was arrested in a parking lot after a sale of approximately 300 grams of cocaine to an undercover State police officer by one Rocky Graciano. During the sale, the defendant remained in the automobile in which the cocaine was delivered. Graciano, who had been the focus of an investigation by the State police narcotics unit for Essex County into drug activity in the Lawrence area, and one other individual were also arrested. After his arrest, Graciano agreed to cooperate with the police. He informed State Trooper Brian O'Neil that

---

[1]The defendant subsequently was charged in two indictments with trafficking in cocaine.

the defendant was his supplier and the defendant had delivered the cocaine used in the drug sale to Graciano at his (Graciano's) home at 5 Forest Street, Lawrence, that same day, on foot. Graciano further stated that he had been involved in numerous drug deals with the defendant, whom he knew lived on Lynch Street in Lawrence. Graciano accompanied several police officers to Lynch Street where he pointed out a light grey, three-story building that had a side entrance displaying the number 7. Graciano stated that he had in the past observed the defendant emerging from that entrance. The police officers ascertained that the entrance led to two apartments, one on the second floor and one on the third floor. Graciano never stated in which of the two apartments the defendant lived or whether anyone else lived with the defendant. In the course of a separate investigation, however, Trooper O'Neil had obtained information from a confidential informant that a third-floor apartment at 7 Lynch Street was a "stash location" for a drug operation and the residence of "two individuals involved in cocaine distribution."

Obtaining keys taken from the defendant at the time of his arrest, Trooper O'Neil and another officer then proceeded to 7 Lynch Street to determine, in his words, "if, in fact, those keys would access the . . . door that [Graciano] had pointed out to me. I did that and those keys did, in fact unlock that door." He then went to the third-floor apartment, knocked loudly, and announced that it was the police. There was no response. Again using the keys taken from the defendant, Trooper O'Neil found that one key "did, in fact, fit and operate the lock[]." On gaining entry, the officers "yelled into the apartment that it was the police" and "checked the rooms" to see whether anyone was inside. In the process, they observed cocaine and cocaine packing equipment in plain view on the kitchen table. Finding the apartment unoccupied, the officers secured the apartment by locking the door. Leaving officers stationed outside, Trooper O'Neil returned to the drug task force office to prepare an application and supporting affidavit for a search warrant for the defendant's apartment.

In his supporting affidavit, Trooper O'Neil stated that "potential co-conspirators could be aware of the police detection of Graciano . . . and [the defendant]." At the suppression

hearing, Trooper O'Neil explained that between three and four hours had elapsed since the defendant's arrest and that, in the meantime, he had overheard a woman in Graciano's apartment telling an unknown telephone caller that Graciano had been arrested. Trooper O'Neil then reiterated his belief at the time that "any occupant of that apartment could be aware that [the defendant] was arrested and remove any evidence or cocaine from that apartment." The judge found this to be the only evidence offered by the Commonwealth explaining the officers' prior entry into the defendant's apartment. The judge determined that the circumstances presented no "compelling necessity for immediate action" and reasoned that "[a]n officer easily could have been stationed at the door to secure the apartment while Trooper O'Neil proceeded to obtain a search warrant." The judge in effect concluded that the initial entry by police into the defendant's apartment was unlawful and, accordingly, allowed the motion to suppress the evidence.

2. The first issue before us is whether the police officers' initial warrantless entry and subsequent search of the defendant's apartment for occupants was permissible. We conclude that it was not.

"The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment [to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights] was designed to circumscribe by the general requirement of a judicial determination of probable cause." *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). Federal and State case law delineates clear boundaries for permissible entry by police officers into a home in order to search or arrest. In the absence of a warrant, two conditions must be met in order for a nonconsensual entry to be valid: there must be probable cause[2] and there must be exigent circumstances. See *Kirk* v. *Louisiana*, 536 U.S. 635, 637-638

[2]For purposes of our discussion, we assume that the information known to the officers at the time of their initial entry into the apartment would justify a finding of probable cause to believe that cocaine, or other evidence related to the defendant's alleged drug sale, would be found therein. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983); *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980).

(2002); *Coolidge* v. *New Hampshire*, 403 U.S. 443, 478 (1971); *Vale* v. *Louisiana*, 399 U.S. 30, 34-35 (1970); *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 798 (1992); *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897 (1984). A reasonable belief as to the potential loss or destruction of evidence may create exigent circumstances permitting a warrantless search and seizure of evidence. See *Commonwealth* v. *Ortiz*, 435 Mass. 569, 572 (2002); *Commonwealth* v. *Martino*, 412 Mass. 267, 276 (1992). The Commonwealth concedes, however, that no such exigent circumstances were present in this case.[3]

The Commonwealth maintains that the police did not need exigent circumstances in order to enter the apartment pending the issuance of a warrant. The Commonwealth characterizes the officer's entry and protective sweep as "securing" the premises and argues that it was fully justified by the police officers' need to ensure that no one was inside who might remove or destroy evidence. In support of its position, the Commonwealth cites cases decided under both Federal and State search and seizure jurisprudence recognizing that "securing" a dwelling, on the basis of probable cause, in order to prevent the destruction or removal of evidence while a search warrant is being sought, is

---

[3]The concession is appropriate. "[W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981). Although the Commonwealth maintains that the officers "confronted an evolving situation that presented the risk that narcotics evidence might be lost or destroyed," no evidence was presented at the suppression hearing of a specific threat that drugs inside the apartment were in imminent danger of being destroyed or that a police presence outside the apartment until a warrant could be obtained would not have prevented any such destruction. See *Commonwealth* v. *Huffman*, 385 Mass. 122, 124-125 (1982). As indicated above, the apartment appeared to be unoccupied. See *Vale* v. *Louisiana*, 399 U.S. 30, 35 (1970) (no exigent circumstances based on potential destruction of evidence justified search of unoccupied house). Cf. *Commonwealth* v. *Ortiz*, 435 Mass. 569, 572 (2002) (unruly crowd preparing to storm store posed threat to integrity of crime scene); *Commonwealth* v. *Martino*, 412 Mass. 267, 275-276 (1992) (defendant's attorney's attempting to remove videotape from defendant's home created reasonable belief as to the potential loss or destruction of evidence); *Commonwealth* v. *Rotolo*, 45 Mass. App. Ct. 927 (1998) (exigent circumstances present when police officer overheard defendant on telephone instructing father to remove clothing and other items from his room).

not by itself an unreasonable search. See *Segura* v. *United States*, 468 U.S. 796, 810 (1984); *Commonwealth* v. *Blake*, 413 Mass. 823, 829-830 (1992); *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990) (art. 14 permits police to secure area to be searched before warrant is procured so long as the search does not commence before issuance of warrant); *Commonwealth* v. *Voris*, 38 Mass. App. Ct. 377, 381-382 & n.3 (1995).

We have not had occasion to consider whether the authority to secure a dwelling allows police officers to enter a dwelling and conduct a limited search in order to ascertain whether the dwelling is unoccupied. We conclude that there is a fundamental difference between securing or controlling the perimeter of a dwelling from the outside and the entry and physical surveillance of a dwelling from the inside. We now hold that police officers who secure a dwelling while a warrant is being sought in order to prevent destruction or removal of evidence may not enter that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken.

We do not interpret Fourth Amendment doctrine to hold otherwise. In *Segura* v. *United States, supra,* the United States Supreme Court affirmed the denial of a motion to suppress evidence seized pursuant to a warrant obtained after police officers entered a defendant's apartment and remained there overnight. *Id.* at 810 (opinion of Burger, C.J.), quoting *Katz* v. *New York,* 389 U.S. 347, 351 (1967) (reasoning that the apartment had been seized not searched and that "the Fourth Amendment protects people, not places"). The procedural and factual posture of the *Segura* case, however, differed significantly from this one. The *Segura* Court considered only the limited question whether the Fourth Amendment requires suppression of evidence *not* observed in plain view on the initial entry. Moreover, the police in *Segura* entered an apartment *known to be occupied* by the defendant's girl friend, the codefendant.[4] *Id.* Only two Justices joined that part of the opinion explaining the

---

[4]In *Segura* v. *United States,* 468 U.S. 796 (1984), State narcotics officers arrested the defendant in the lobby of his apartment building but did not apply for a search warrant until the following day. Instead, they proceeded to the

Court's holding. Four dissenters objected that "this seizure was constitutionally unreasonable from the moment it began" because it "was conducted without a warrant and in the absence of exigent circumstances." *Id.* at 824 (Stevens, J., dissenting).

Significantly, the following excerpt from *Segura* (the same part joined by but two Justices) appears to assume that the initial entry was illegal: "[A]bsent exigent circumstances, the entry may have constituted an illegal search, or interference with petitioners' privacy interests, requiring suppression of all evidence observed during the entry. Securing the premises from within, however, was no more an interference with the petitioners' possessory interests in the contents of the apartment than a perimeter 'stakeout.' In other words, the initial entry — legal or not — does not affect the reasonableness of the seizure." *Id.* at 811 (opinion of Burger, C.J.). After analyzing the reasoning of the *Segura* decision, a leading commentator in the field of Fourth Amendment protection has concluded that "it does not appear that the majority really has approved warrantless entry and impoundment even absent truly exigent circumstances." 3 W.R. LaFave, Search and Seizure § 6.5 (c), at 365 (3d ed. 1996). The commentator recognizes that police may impound premises from the outside without a warrant or exigent circumstances, but unequivocally states: "If . . . the police make a physical entry into the premises in order to effectuate the impoundment, then there has been both a seizure and a search." *Id.* at 366.

On the basis of art. 14, we adhere to that view. An individual's protections guaranteed under art. 14 do not cease at the time of arrest. The Commonwealth asserts that the risk that others knew of the defendant's arrest and that one or more individuals inside his apartment might have removed or destroyed evidence before

---

defendant's apartment, knocked, and, when it was opened by the codefendant, entered the apartment without permission. In the process of conducting a cursory sweep of the apartment to determine whether there were others present who might endanger their safety, the officers observed, in plain view, various drug paraphernalia. The officers then secured the premises until the warrant was obtained. Due to what the Supreme Court termed "administrative delay," the police remained in the defendant's apartment from 11:15 P.M. until 6 P.M. the following day, or approximately nineteen hours. A search conducted under the warrant produced drugs and guns. See *id.* at 800-802.

a warrant issued justified the officers' limited search of the premises for occupants.[5] Adoption of this reasoning, however, would allow police officers to enter a suspect's home every time an arrest is made, so long as police have probable cause to believe that evidence might be found therein. There always will be a possibility that a confederate of the arrestee might destroy or conceal evidence. We decline to hold that an arrest on the street, without more, can provide its own justification for a warrantless entry and search, albeit a limited one, of a dwelling.[6] We conclude that, although the officers clearly had a right to control the premises from the outside until a search warrant was obtained, they had no basis for believing that immediate entry was necessary to prevent the destruction of evidence. For purposes of deciding this case, we need not determine with precision the minimum requirements that would justify such an entry, as the facts and circumstances here lacked an obvious prerequisite. There was no indication whatsoever that the dwell-

---

[5] The Commonwealth points to testimony at the suppression hearing that the defendant had been arrested in front of a large crowd in a public area and that Trooper O'Neil had overheard a woman in Graciano's apartment inform an unknown telephone caller that Graciano had been arrested.

[6] The Commonwealth claims that the police had authority to search the apartment in order to ensure their safety and the safety of residents of the apartment building and notes that "substantial dealers of narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment." *United States* v. *Wiener*, 534 F.2d 15, 18 (2d Cir.), cert. denied, 429 U.S. 820 (1976). See *United States* v. *Caggiano*, 899 F.2d 99, 103 (1st Cir. 1990). According to the Commonwealth, "[p]rudence dictated that the police enter the apartment not only to prevent the potential loss of evidence, but to 'protect themselves from apparent risk, and it does not matter in retrospect that the peril was not as great as it had initially appeared.' " *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 395, cert. denied, 516 U.S. 861 (1995). This argument (apart from the Commonwealth's clear concession on the issue of exigency, see *supra* at 620 & note 3) defies logic. An empty apartment poses no danger. Moreover, had the police officers had reason to believe dangerous individuals lurked quietly inside the apartment, prudence would appear to dictate that the safer course to follow was to remain outside and await both a search warrant and the arrival of additional officers, rather than bursting in, at peril to themselves and to other innocent parties. We recently rejected the proposal that "categorical assertions" linking firearms to drug dealers, such as those advanced by the Commonwealth, justify dispensing with a review of actual safety concerns facing police officers in a specific case. *Commonwealth* v. *Jimenez*, 438 Mass. 213, 219-220 (2002) (considering requirements for "no-knock" execution of search warrants).

ing was occupied at the time — the officers had no knowledge that anyone was inside, there was no response to their knocking at the door, and they apparently heard no sounds coming from within.[7] By definition, any evidence located within an unoccupied dwelling can be fully protected by controlling access to that dwelling from the outside. There can be no justification for a warrantless entry absent at least an objectively reasonable belief that someone is inside. On the facts of this case, we agree with the judge's determination that "[a]n officer easily could have been stationed at the door to secure the apartment while Trooper O'Neil proceeded to obtain a search warrant."[8]

3. Our conclusion that the initial entry and protective sweep was impermissible under art. 14 does not, however, automatically require the exclusion of the evidence. Although the exclusionary rule prohibits the admission of evidence obtained during an illegal search as "fruit of the poisonous tree," evidence initially discovered as a consequence of an unlawful search may be admissible if later acquired independently by lawful means untainted by the initial illegality. See *Murray* v. *United States*, 487 U.S. 533, 537-538 (1988); *Segura* v. *United States, supra* at 813-814; *Commonwealth* v. *Blake, supra* at 830; *Commonwealth* v. *Frodyma*, 393 Mass. 438, 442 (1984), and cases cited. See also *Commonwealth* v. *O'Connor*, 406 Mass. 112, 115 (1989) ("principles of deterrence underlying the

---

[7]These facts distinguish the present case from *Commonwealth* v. *Blake*, 413 Mass. 823, 827-828 n.6, 829-830 (1992). A review of the record in that case reveals that the Federal agents who entered the defendant's house to secure it while awaiting the issuance of a search warrant did so with knowledge that other people involved in the defendant's drug operation had been present at the dwelling the day before and that at least one person was inside the dwelling shortly before the sale that resulted in the defendant's arrest on the street nearby.

[8]We should make clear that nothing in this opinion should be read to indicate that police officers who arrest a suspect in a private dwelling are not entitled to conduct a limited search to determine whether confederates are present who may pose a danger to the officers, see *Commonwealth* v. *Walker*, 370 Mass. 548, 556, cert. denied, 429 U.S. 943 (1976), or that, in exigent circumstances, police officers may not enter and search a dwelling without a warrant. See note 3, *supra*; *Commonwealth* v. *Forde*, 367 Mass. 798, 807 (1975). The admission in evidence of things inadvertently observed in plain view during the course of such searches would, of course, be justified under the plain view doctrine. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 478 (1980).

exclusionary rule will not be undercut by the application of an inevitable discovery exception in the circumstances of this case").

The Appeals Court correctly recognized that, regardless of the illegality of the initial entry and search, the evidence is admissible as long as the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause to search the defendant's apartment, apart from the observation of the cocaine and cocaine distribution materials. See *Commonwealth* v. *DeJesus*, 56 Mass. App. Ct. 523, 525 n.1 (2002).[9] This analysis is consistent with both precedent and policy. See *Wong Sun* v. *United States*, 371 U.S. 471, 484 (1963); *Commonwealth* v. *White*, 374 Mass. 132, 139 (1977), aff'd, 439 U.S. 280 (1978); *Commonwealth* v. *Hall*, 366 Mass. 790, 795-797 (1975).

It is a simple matter to exclude from the supporting affidavit all information gained from the initial entry by striking the following sentence concerning observations made while inside the apartment: "After entering the apartment to conductive [*sic*] sweep for occupants this officer immediately observed cocaine and cocaine packing equipment on the kitchen table." What is left relates the information that Graciano had been the subject of an ongoing cocaine investigation by Lawrence drug task force officers ending that day when Graciano and the defendant were arrested after having delivered approximately 300 grams of cocaine to an undercover police officer; Graciano had informed the officers that the defendant was his supplier and had supplied the cocaine for that delivery; the defendant lived in a gray three-story dwelling on Lynch Street, with two front doors, "the right side front door displaying a [5] next to it and the left front door displaying a 7 next to it"; Graciano knew this because the defendant told him; and Graciano had met the defendant several times in front of the Lynch Street building but had not been inside. In addition, the affidavit stated that "[w]ithin the past two weeks this officer has received information from a Confidential Reliable Informant regarding a cocaine

---

[9] A divided panel determined that there was not. See *Commonwealth* v. *DeJesus*, 56 Mass. App. Ct. 523, 525 n.1 (2002); *id.* at 538 (Kantrowitz, J., concurring in part, dissenting in part).

distribution operation at 7 Lynch Street, floor 3, Lawrence, MA." The affidavit then described the manner in which police effectuated entry into both the outside door of the building and the inside door to the third-floor apartment, by using keys that were taken from the defendant at his arrest.

An affidavit must contain sufficient information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that the items reasonably may be expected to be located in the place to be searched at the time the search warrant issues. See *Commonwealth* v. *Wilson*, 427 Mass. 336, 342 (1998). Whether the facts set forth in the affidavit added up to probable cause to support the search involves application of familiar principles expressed in *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 414-415 (1969). See *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985). Under the *Aguilar-Spinelli* standard, where information in the affidavit is based, as here, in part on a tip of an unidentified informant, the affidavit must also apprise the magistrate of facts and circumstances showing both (1) the basis of the informant's knowledge; and (2) the credibility of the informant and the reliability of his information. See *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990). Although, standing alone, the information contained in the affidavit attributed to "a Confidential Reliable Informant" fails on both prongs of this standard, it is well settled that independent police corroboration of the information's tip can compensate for deficiencies in either or both prongs and thus satisfy the probable cause requirement under art. 14. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 208 (1996); *Commonwealth* v. *Blake, supra* at 827, and cases cited; *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321-322 (1989).

Here, the anonymous informant's tip that cocaine would be found at the apartment was fully corroborated by the police investigation leading to the defendant's arrest, as well as by Graciano's statements to police that the defendant was his supplier and that he had, in fact, delivered cocaine that day. The only information not so corroborated was the description of the premises to be searched as the third-floor apartment at 7 Lynch Street (rather than the second-floor apartment of the same

building). Any defect under the *Aguilar-Spinelli* standard with respect to this information, however, was cured by the recitation, in the affidavit, of police use of the keys seized from the defendant to unlock both the outside door of 7 Lynch Street and the inside door to the third-floor apartment.[10] That the keys fit the locks fully corroborated the information provided by the informant and provided a nexus between the earlier drug transaction involving the defendant and the apartment to be searched. See *Commonwealth* v. *Blake, supra* at 829.

We conclude that, after striking the reference to the drugs and drug paraphernalia observed during the illegal search, the cumulative information remaining in the affidavit provided probable cause to believe that the cocaine and implements used for cocaine distribution would be found in the third-floor apartment at 7 Lynch Street. On the facts of this case, therefore, there was an independent source for the challenged evidence — a valid search warrant untainted by information discovered during the initial entry into the apartment.[11] Although the initial entry was

---

[10]It cannot be contended that using the key to open the door to the apartment formed an integral part of the illegal entry and, thus, information that the keys fit the locks may not independently corroborate the informant's statements. Inserting a key into a lock and turning it to see whether it fits cannot be construed as a warrantless search of a lock tumbler, and, even assuming that it could, such conduct would not violate any constitutional rights of the defendant. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 208-210 (1996) ("Given the nature of the lock mechanism, which was accessible from a common hallway, any expectation of privacy in the contents of the lock tumbler was minimal"). See also *United States* v. *Lyons*, 898 F.2d 210, 212 (1st Cir.), cert. denied, 498 U.S. 920 (1990). The police officers needed only a reasonable suspicion to insert the key, and such suspicion arose from their knowledge that the defendant lived in one of two apartments at the Lynch Street building, and that the informant had identified the third-floor apartment as a cocaine distribution operation.

[11]In *Murray* v. *United States*, 487 U.S. 533 (1988), the Supreme Court extended the independent source doctrine to apply to "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Id.* at 537. Accordingly, the *Murray* Court held that, under the Fourth Amendment, bales of marijuana first discovered by Federal law enforcement agents during an illegal warrantless search of a warehouse may, when later rediscovered and seized pursuant to a warrant to search the warehouse, have an independent source in the warrant, provided that neither the decision to seek that warrant nor the decision to issue it was influenced by the earlier illegal entry and

illegal, it was irrelevant to the successful search that ensued, and, hence, the exclusion of the evidence is not warranted.

4. The order suppressing the Commonwealth's evidence is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

observation of the bags. See *id.* at 541-543. Because the District Court judge had made no clear findings as to whether the agents would have sought a warrant had they not earlier entered the warehouse, the *Murray* Court remanded the case to the trial court for a determination whether there was, in fact, an independent source for the challenged evidence. See *id.* at 543-544.

Our decision in this case is grounded on art. 14. Cognizant that we are not free to impose less restrictive standards under State constitutional analysis than are required under the Fourth Amendment, we nevertheless conclude that it is not necessary to remand this case to the trial judge. The defendant raises no claim that the police officers would not have sought a warrant had they not earlier entered the apartment and appears to concede that the initial entry, albeit illegal, was made with the intent thereafter to obtain a warrant. The defendant was already under arrest for his involvement in a sale of approximately 300 grams of cocaine, and had been identified by Graciano as a regular supplier of cocaine. There can be no doubt that the police were committed to an investigation of the defendant's cocaine dealing before seeing additional cocaine in his kitchen, and would have sought the search warrant with or without that observation. With respect to the independent source issue, the defendant asserts only that the affidavit in support of the warrant was insufficient to support a finding of probable cause without the description of cocaine and drug paraphernalia observed during the initial illegal entry. (The defendant undoubtedly does so because, unlike in the *Murray* case, the supporting affidavit on its face indicates that a warrantless entry was made and that at least some of the evidence listed on the warrant application had been observed in plain view). Our determination in this case that the search pursuant to the warrant was a genuinely independent source of the evidence at issue is, on the record established by the parties, purely one of law.