Agnes, A.J.
INTRODUCTION
The defendant is charged by indictment with trafficking in cocaine and illegal possession of a handgun as a result of evidence seized by the Worcester Police Department from apartments located at 3 Clement Street and 2A Marble Street in Worcester on May 4, 1994. The defendant has filed a pretrial motion to suppress. The principal issue in this case is the validity of a warrantless search of 2A Marble Street that took place following the execution of a search warrant for apartment #3 at 3 Clement Street. Based on the credible evidence presented at the hearing on the defendant’s motion, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
Thomas Gaffney is a Lieutenant on the Worcester Police department with 16 years of experience as a member of the Vice Squad. On May 2, 2002 at approximately 8:10 p.m. he and 10-12 other police of *446 ficers executed a search warrant at 3 Clement Street apartment #3 in Worcester. This was part of an ongoing investigation of drug trafficking. The police had information from a confidential informant (Cl) that cocaine was being sold from apartment #3 by 3 Hispanic males and 2 females who would leave the rear door of the apartment with keys, go to another apartment close by, retrieve drugs, and return to apartment #3 to complete the sale. The main targets of the search were “Edgar," “Jami” and “Alan Rodriquez,” the defendant in this case.
The Police placed the apartment under surveillance. Observations were made of the presence of a blue Dynasty motor vehicle that the informant reported was used by the sellers. There appeared to be lookouts in the area, there was a significant amount of foot traffic in and out of the apartment, and the lights were seen to go on and off on a frequent basis. The rear area of apartment #3 was difficult to maintain under surveillance because it emptied out into an open courtyard from which one had access to several other towers within the complex containing individual apartments. Based on his substantial training and experience as a narcotics investigator, these observations were consistent with trafficking in narcotics from that apartment.
The building in which apartment #3 is located is a three-story brick building on the comer of Main Street and Clement Street. The police executed the warrant by entering the apartment through its front door. A loaded, 9 millimeter handgun and ammunition was located in the kitchen stove. Drug paraphernalia associated with packaging and weighing cocaine was located in the kitchen area as well, but no narcotics were found with the exception of a small amount of marijuana. No one appeared to be in the apartment when the warrant was executed. However, when the police went to the rear of the apartment, the suspect named “Edgar” was seen running out of the apartment. The suspect named “Jami” was stopped on his way into the apartment. Edgar had several keys on his person which did not fit apartment #3. The keys were seized by the police.
Worcester Police Officer Lesperance, an experienced narcotics investigator who had served in the Vice Squad for 25 years, did not take part in the execution of the warrant for apartment # 1. Lieutenant Gaffney briefed him about the search and gave him 3 keys which had been seized from “Edgar.” He also received a picture of the third target, defendant Alan Rodriquez. Lieutenant Gaffney told him to find the other apartment that was serving as the stash. Police Officer Lesperance went to the manager’s office. A telephone call was made and in about ten minutes the acting manager named “Paul” appeared and advised him that the people in apartment #3 “had access” to apartment #1 of 2A Marble Street which was located in another part of the complex. One of the keys he received opened a hallway door leading inside of the building known as 2A Marble Street. Officer Lesperance walked up a staircase and knocked on another door. No one responded. He opened this second door with another one of the keys. He proceeded to another interior door which was marked “apartment #1.” He announced his presence (“Police!”). From inside, he heard a male voice say “Who?” Someone on the inside opened the outer door a crack and officer Lesperance recognized the individual as the defendant based on the photograph he had received from Lieutenant Gaffney. He was not able to see the hands of the person who had opened the door. Fearing for his safety based on the report of a loaded gun seized from the kitchen oven of the 3 Clement Street apartment, Officer Lesperance displayed his badge and pushed his way into the apartment. He immediately conducted a protective sweep of the apartment whereupon he discovered a quantity of what appeared to be crack cocaine and glassine baggies in plain view on the counter.
The police had no information prior to the search that linked apartment #1 and apartment #3 which were in different wings or towers within the complex, and no knowledge of the presence of narcotic drugs within apartment #1 at 2A Marble Street.
RULING OF LAW
1. The affidavit in support of the search warrant establishes probable cause for the search of apartment #1 at 3 Clement Street.[1]
A. Probable cause standard based on information supplied by a confidential informant.
“Constitutional standards for the reasonableness of a search or seizure . . . require that there be a fair probability that contraband or evidence of a crime will be found in a particular place, or that the issuing magistrate have a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. This probability standard does not mean that it must appear more likely than not that the items are in a particular place to be searched. And, there is no requirement at all that the person to whom a search warrant is directed should himself even be suspected of crime, much less that there be probable cause to believe him guilty.” Matter of Grand Jury Investigation, 427 Mass. 221, 224-25 (1998) (citations omitted). See also Commonwealth v. Donahue, 430 Mass. 710 (2000). Probable cause is, however, more than a mere statement of belief; it must include the underlying circumstances that produce the belief. Commonwealth v. Von Utter, 355 Mass. 597, 599 (1969). It is “more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Truong Vo Tam, 49 Mass.App.Ct. 31, 39 (2000). Accord, Commonwealth v. Clarke, 44 Mass.App.Ct. 502, 509 (1998). Probable cause exists when the facts and circumstan *447 ces known by the police are sufficient to warrant a prudent person in believing that a crime has been committed. Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert den., 446 U.S. 955 (1980).
When the police rely on information supplied by an anonymous and confidential informant, Massachusetts follows the two-pronged test set out in Spinelli v. United States, 393 U.S. 410, 415 (1969), and Aguilar v. Texas, 378 U.S. 108, 114 (1964). See Commonwealth v. Upton, 394 Mass. 363, 374-75 (1985). In such a case, the officer’s affidavit must supply the issuing clerk or judge with facts showing some of the underlying circumstances supporting the informant’s knowledge, and some of the underlying circumstances supporting the informant’s reliability. “If the informant’s tip fails to satisfy one of these portions of the Aguilar test, other independent, corroborating allegations in the affidavit may supplement the informant’s tip to support a finding of probable cause . . . Nevertheless, ‘[e]ach prong of the Aguilar-Spinelli test — the basis of knowledge and the veracity of the informant— presents an independently important consideration.” Commonwealth v. Upton, supra at 375-76. Accord, Commonwealth v. O’Day, 440 Mass. 296, 300-01 (2003).
B. The affidavit by Lieutenant Gaffney.
The affidavit submitted by Lieutenant Gaffney declares that on or about April 25, 1994, he received information from a confidential informant (Cl) that drugs were being sold from 3 Clement Street Apartment #1. The affiant states that the Cl provided information to him in the past that led to arrests and seizures of drugs, currency and guns, and to the convictions of persons before the district and superior courts of Worcester county. These assertions are sufficient underlying circumstances to establish that the Cl is reliable. See Commonwealth v. Amaral, 407 Mass. 511, 515 (1990).
With regard to the requirement that the affiant provide underlying circumstances which demonstrate that the Cl had a basis of knowledge, the affiant states that within 24 hours of the search the Cl was present inside 3 Clement Street apartment # 1 and saw cocaine and two of the three targets of the search. See Commonwealth v. Upton, 394 Mass. 363, 374-75 (1985).
In addition, the observations of the police as a result of their surveillance supply additional support in the form of corroboration of information supplied by the informant. These facts taken together are sufficient to establish probable cause to believe that persons were selling cocaine from 3 Clement Street apartment #1. See generally Commonwealth v. Kennedy, 426 Mass. 703, 707 (1998) (citations omitted).[2]
2. The police had probable cause and exigent circumstances for the warrantless entry into 2A Marble Street Apartment # 1.
When a police investigation of illegal drug activity has been underway for some period of time, it is often the case that the evidence points to a particular pattern of conduct that the target or targets have engaged in that afford the police ample opportunity to anticipate the exact location where a drug transaction will take place or where illegal drugs are kept and stored. In such a case, the police are not permitted to proceed without a warrant. See, e.g., Commonwealth v. Wigfall, 32 Mass.App.Ct. 582 (1992). In other situations, the investigation involves a more dynamic situation in which the police are uncertain about where the drugs are located, who will be making a delivery or where the transaction will take place, or are kept waiting by the target until the very last moment before the location or nature of the transaction is revealed. In such a case, the uncertainty creates exigent circumstances which permit the police to proceed without a search warrant. See, e.g., Commonwealth v. DiToro, 51 Mass.App.Ct. 191, 195-97(2001); Commonwealth v. Martinez, 47 Mass.App.Ct. 839, 842-43 (1999); Commonwealth v. Rotolo, 45 Mass.App.Ct. 927, rev. den., 428 Mass. 1110 (1998); Commonwealth v. Curdo, 26 Mass.App.Ct. 738, 746, rev. den., 404 Mass. 1102 (1989).
In the present case, although the police may have had probable cause to believe that drugs would be found in a second location, they were not in a position to learn the location of the second apartment until they executed the warrant and seized the keys. Time was of the essence because one of the targets was not accounted for and could have seen officers executing the warrant at the first apartment. Under the circumstances, the police had every right to enter the second apartment without a warrant.
This case is distinguishable from Commonwealth v. DeJesus, 439 Mass. 616, 621 (2003), where the Court held that “police officers who secure a dwelling while a warrant is being sought in order to prevent destruction or removal of evidence may not enter that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken.”[3]
In the present case, unlike in DeJesus, the police did not have the luxury of securing the second apartment from the outside while a warrant was sought. See Commonwealth v. Blake, 413 Mass. 823, 827-28 n.6, 829-30 (1992) (Upholding warrantless entry based on a concern that persons involved in the drug operation were recently inside the apartment and could still be there). Once the police discovered that the defendant was inside the second apartment, a warrantless entry became necessary to protect evidence from being destroyed. Once inside the apartment, a protective sweep was permissible for the safety of the officers. “The search was limited in scope and occurred at a time when the suspicion of danger had not been dispelled.” Commonwealth v. Tam Bui, 419 Mass. 392, 396 (1995). Contrast Commonwealth v. *448 Beauchamp, 424 Mass. 682, 691 (1997); Commonwealth v. Bass, 24 Mass.App.Ct. 972, 974-75 (1987) (rescript). Moreover, in this case, unlike the example hypothesized in Commonwealth v. DeJesus, 439 Mass, at 623 n.6, the defendant was aware of the police presence just outside his door making the police vulnerable to attack from inside the apartment if the defendant resorted to a firearm. Thus, concerns about officer safety added to the exigent circumstances under the circumstances of this case. Once the police observed the drugs in plain view during their protective search, they were authorized, indeed compelled, to seize them without a warrant. See Commonwealth v. Santana, 420 Mass. 205, 211 (1995).
ORDER
For the above reasons, the defendant’s motion to suppress is DENIED.

This matter was covered in part by the earlier motion argued before this court last year. At that time, a portion of the defendant’s motion dealing with the search of Apartment #3 at 3 Clement Street was denied by the court (Fecteau, J.). The views expressed herein are entirely consistent with the analysis in the court’s Memorandum of Decision filed on November 7, 2003.

The question of the basis for a no-knock warrant is fully covered in the memorandum of Decision relating to this matter previously filed by the Court (Fecteau, J.).

In DeJesus, 439 Mass, at 622-23, the Court explained the reasons for its holding as follows:
An individual’s protections guaranteed under art. 14 do not cease at the time of arrest. The Commonwealth asserts that the risk that others knew of the defendant’s airest and that one or more individuals inside his apartment might have removed or destroyed evidence before a warrant issued justified the officers’ limited search of the premises for occupants. Adoption of this reasoning, however, would allow police officers to enter a suspect’s home every time an arrest is made, so long as police have probable cause to believe that evidence might be found therein. There always will be a possibility that a confederate of the arrestee might destroy or conceal evidence. We decline to hold that an arrest on the street, without more, can provide its own justification for a warrantless entry and search, albeit a limited one, of a dwelling. We conclude that, although the officers clearly had a right to control the premises from the outside until a search warrant was obtained, they had no basis for believing that immediate entry was necessary to prevent the destruction of evidence. For purposes of deciding this case, we need not determine with precision the minimum requirements that would justify such an entry, as the facts and circumstances here lacked an obvious prerequisite. There was no indication whatsoever that the dwelling was occupied at the time-the officers had no knowledge that anyone was inside, there was no response to their knocking at the door, and they apparently heard no sounds coming from within.