NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11985

COMMONWEALTH  vs.  QUOIZEL L. WILSON.


Barnstable.      March 6, 2020. – November 30, 2020.

Present:  Gants, C.J., Lenk, Lowy, Cypher, & Kafker, JJ.[1]


Homicide.  Cellular Telephone.  Practice, Criminal, Motion to
    suppress, Affidavit, Warrant, Assistance of counsel,
    Capital case.  Search and Seizure, Affidavit, Warrant,
    Fruits of illegal search.  Constitutional Law, Search and
    seizure, Assistance of counsel.



Indictments found and returned in the Superior Court
Department on November 12, 2013.

A pretrial motion to suppress evidence was heard by Gary A.
Nickerson, J., a motion for reconsideration was considered by
him, and the cases were tried before him; and a motion for a new
trial, filed on August 2, 2018, was considered by Robert C.
Rufo, J.


Janet Hetherwick Pumphrey for the defendant.
Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.


_____

    [1] Chief Justice Gants participated in the deliberation on
this case prior to his death.

CYPHER, J.  A jury convicted the defendant, Quoizel L. Wilson, of murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty, after he shot the victim, Trudie Hall, multiple times in the torso, killing her.  The defendant also was convicted of assault and battery by means of a dangerous weapon and improper disposition of a human body.  The defendant raises two primary arguments: (1) his cell site location information (CSLI) should have been suppressed because originally it was obtained by police without a warrant and a subsequent search for the same information pursuant to a warrant was tainted by the initial warrantless search; and (2) his trial counsel provided ineffective assistance by failing to move to suppress the fruits of the initial warrantless CSLI search.  We consolidated the defendant's direct appeal with the appeal from the denial of his motion for a new trial, and we now affirm.  We also decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E.

Background.  1.  Facts.  We summarize the facts the jury could have found, reserving certain facts for later discussion. On July 27, 2010, Hall, a Nantucket resident, traveled to Hyannis, where she and her husband, Ram Rimal, checked into separate rooms at the Bayside Resort hotel.  The two were scheduled to attend an appointment in Boston the following day. Rimal had rented a vehicle.  He and Hall drove to a mall to see

a movie together, and then bought take-out food for dinner. Afterward, they returned to the hotel; Rimal went to his room, and Hall took the rental vehicle, saying she had to print some things. That was the last time Rimal saw her.

The following morning Rimal unsuccessfully tried to reach Hall by cellular telephone (cell phone). Hall was not in her hotel room, but the bed appeared to have been slept in, and Hall had left a shopping bag containing clothes and money in the room. Rimal contacted Hall's mother, Vivienne Walker, and the two reported Hall's disappearance to police. Rimal later obtained call records for Hall's cell phone, and Walker tried calling the numbers Hall most recently had contacted. One of the telephone numbers belonged to the defendant. Walker later gave the list of telephone numbers to police.

Hall was five months pregnant at the time of her disappearance. She had been having an affair with the defendant, who also was married. Walker also had received a telephone call from an unknown woman who made "slander-ish" remarks about Hall's pregnancy. Walker told police she thought the caller was the wife of the father of Hall's baby.

On July 29, 2010, police located the rental vehicle in a commuter parking lot by Route 6. The interior of the vehicle was stained with a significant amount of human blood, later shown to belong to Hall, consistent with a fatal amount of blood

loss if left untreated.  Among other things, police recovered from the vehicle a copper jacket fragment from a spent projectile, two lead fragments, and one lead core portion of a spent projectile, apparent bone fragments, and a piece of human flesh.  The copper jacket fragment was fired from a .38 caliber class weapon, which could include a nine millimeter handgun.

The defendant was the registered owner of a nine millimeter Beretta 92FS pistol; records showed that the pistol had not been reported missing.  The defendant also previously had made statements in front of friends implying that he carried a gun with sixteen rounds, consistent with a nine millimeter Beretta 92FS pistol.

Hall had told a friend that she thought the defendant was the father of her unborn child and that he wanted her to get an abortion.[2]  On July 29, 2010, someone sent a message from the victim's social media account, claiming she was in the hospital after an abortion.  Police determined that Hall was not a patient at any area hospital.

At about 1 A.M. on July 30, 2010, police spoke with the defendant on the front steps of his house.  His wife was in the house at the time.  The defendant told police that he was a

_____

[2] An analysis of the fetal skeletal remains later confirmed that the defendant was the father.

friend of Hall and admitted that he had seen her at the hotel on July 27, but he denied having any sexual relationship with her.

On August 2, 2010, police obtained cell phone subscriber information and call logs for Hall, the defendant, and another number belonging to the defendant's wife. The records showed numerous calls and text messages between Hall and the defendant on July 27, until about 10 P.M. Between 10:09 and 10:18 P.M., Hall made eleven calls, each lasting only seconds, to a telephone number belonging to Mawande Senene. The activity on Hall's telephone ceased at 10:49 P.M. Police interviewed Senene on August 2, and he stated he had noticed the calls, but did not pick up because he did not recognize the number. He said he had a voicemail from a "Rudy," "Trudie," or "Judy," asking him to call her back, but he did not. Instead, he called the defendant because he recognized the number as a Nantucket exchange, and he knew the defendant used to live there.

On August 3, 2010, police obtained additional cell phone records that included CSLI[3] for the same three numbers belonging

_____

[3] The term "CSLI" (cell site location information) refers to "a cellular telephone service record or records that contain information identifying the base station towers and sectors that receive transmissions from a [cellular] telephone" (citation omitted). Commonwealth v. Fredericq, 482 Mass. 70, 71 n.2 (2019). "It may be used to identify the approximate location of the cellular telephone based on the telephone's communication with a particular cell site." Id.

to Hall, the defendant, and the defendant's wife.[4]  The defendant's CSLI placed him at the victim's hotel, at the commuter lot where the rental vehicle was found, and in the location where the victim's body would later be discovered, at relevant times on the night of the murder.  The CSLI also showed that Hall's cell phone and the defendant's cell phone traveled together throughout the evening of July 27.

The defendant was interviewed by police for the second time on August 3, 2010, at his own request.  During the interview, which was recorded, the defendant admitted that he had been having an affair with Hall, but insisted he had been at home the night of the murder.  After being confronted with the fact that police had information (based on the CSLI) showing that he was not at home, the defendant stated that he had been driving on the Service Road that night to sell cocaine to a friend named J.D. Lang.

Police interviewed Lang on August 4, 2010.  Lang at first stated that he had met up with the defendant the night of the murder, but later admitted that he had been lying and that the defendant had called him and asked him to give that false story

_____

[4] In order to access the CSLI, police obtained an order pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d). The § 2703(d) order was obtained by orally presenting information to a judge in chambers.  No written affidavit was submitted in support of the application.

if someone called asking about him.  Police also interviewed Senene again on August 4, 2010.  Senene then told police that on July 29, the defendant had requested that Senene meet him at his house, and when Senene arrived, the defendant had asked him to lie and say he was with the defendant the night of July 27. Senene refused.

Police interviewed the defendant again on August 5, 2010, the same day that they executed a search warrant for the defendant's home.  During the interview, the defendant repeated his claims that he had met with Hall at the hotel the afternoon of July 27, and denied meeting with her later in the evening. He repeated his assertion that he had met with Lang later that evening to sell him drugs.  Even after being confronted with information (derived from the CSLI) that contradicted his claims, the defendant insisted on his version of events.

Hall's remains were discovered nearly two years after the murder by a man walking his dog in a wooded area near a water tower off Hayway Road in Falmouth.[5]  Hall's skeleton showed damage consistent with gunshot trauma.  The trauma indicated that the bullets traveled from the back or side of Hall's body toward the front.

---

[5] Employment records showed that Hayway Road was on the defendant's recycling collections truck route.

Seven jacketed spent projectiles and one jacket from a spent projectile were recovered from the scene at Hayway Road, all of which were .38 caliber ammunition bearing markings consistent with having been shot from a Beretta model 92. The medical examiner determined that the cause of death was gunshot wounds to the torso.

In 2014, police acquired a search warrant to obtain the same CSLI information that they previously had obtained in 2010 pursuant to a § 2703 order.

2. <u>Procedural background</u>. Prior to trial, the defendant moved to suppress all of the cell phone records obtained by the Commonwealth. The trial judge denied the motion, determining that the defendant lacked standing to challenge the Commonwealth's access to records other than his own; that the defendant had no reasonable expectation of privacy in his subscriber and call records; and that although the defendant did have a reasonable expectation of privacy in his own CSLI, there was no constitutional violation because "[t]he facts known to [police] as of August 3rd, and conveyed [orally] to [the judge who authorized the order], established probable cause for the issuance of an order compelling the disclosure of CSLI data."

The defendant moved for reconsideration, which was denied. A single justice of this court denied the defendant's application for leave to prosecute an interlocutory appeal. The

defendant renewed his objection to the admission of the cell phone records during trial.  In May of 2015, after a jury trial, the defendant was convicted on all counts.  He timely appealed.

On August 2, 2018, the defendant filed a motion for a new trial and for an evidentiary hearing, arguing that under the United States Supreme Court's opinion in Carpenter v. United States, 138 S. Ct. 2206 (2018), and this court's prior decision in Commonwealth v. Augustine, 467 Mass. 230 (2014) (Augustine I), S.C., 470 Mass. 837 and 472 Mass. 448 (2015), it was error not to suppress his CSLI.  The defendant further argued that his trial counsel provided ineffective assistance by failing to move to suppress a variety of evidence as "fruits" of the illegal search.  The motion judge, who was not the trial judge, denied the motion.  The defendant's appeal from the denial of his motion for a new trial was consolidated with his direct appeal.

Discussion. 1. Standard of review.  When considering a defendant's direct appeal from a conviction of murder in the first degree along with an appeal from the denial of a motion for a new trial, we review the entire case pursuant to G. L. c. 278, § 33E.  See, e.g., Commonwealth v. Upton, 484 Mass. 155, 159-160 (2020); Commonwealth v. Goitia, 480 Mass. 763, 768 (2018).  In so doing, we review "raised or preserved issues according to their constitutional or common-law standard and analyze any unraised, unpreserved, or unargued errors, and other

errors we discover after a comprehensive review of the entire record, for a substantial likelihood of a miscarriage of justice." Upton, supra at 160, citing Commonwealth v. Brown, 477 Mass. 805, 821 (2017), cert. denied, 139 S. Ct. 54 (2018). "For an error to have created a substantial likelihood of a miscarriage of justice, it must have been likely to have influenced the jury's conclusion" (quotation and citation omitted). Upton, supra.

2. Suppression of the defendant's CSLI. The defendant first contends that the trial judge erred in failing to suppress his CSLI, and that the motion judge erred in denying the defendant's motion for a new trial and for an evidentiary hearing on this same basis, particularly in light of the United States Supreme Court's opinion in Carpenter, supra, and this court's prior opinion in Augustine I, supra.[6]

When reviewing a decision on a motion to suppress, we accept the judge's findings of fact absent clear error, but we conduct "an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Estabrook, 472 Mass. 852, 857

---

[6] The parties do not dispute that the holdings in Carpenter v. United States, 138 S. Ct. 2206 (2018), and Commonwealth v. Augustine, 467 Mass. 230 (2014) (Augustine I), S.C., 470 Mass. 837 and 472 Mass. 448 (2015), apply retroactively to the CSLI search at issue here.

(2015), quoting Commonwealth v. Watson, 455 Mass. 246, 250 (2009). With respect to a motion for a new trial, we "examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Wright, 469 Mass. 447, 461 (2014), quoting Commonwealth v. Weichell, 446 Mass. 785, 799 (2006). "If the motion judge did not preside at the trial, we defer only to the judge's credibility determinations and 'regard ourselves in as good a position as the motion judge to assess the trial record.'" Wright, supra, quoting Weichell, supra.

In Carpenter, the Supreme Court held that "[g]iven the unique nature of cell phone location records, . . . an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," and therefore, where the government seeks access to at least seven days' worth of such information, as it did in that case, that access constitutes a search for purposes of the Fourth Amendment to the United States Constitution. Carpenter, 138 S. Ct. at 2217 & n.3. In such circumstances, the Court held that "the Government's obligation is a familiar one -- get a warrant." Id. at 2221. The Court also concluded that a court order to obtain such information under the Stored Communications Act, 18 U.S.C. § 2703, which required the government to show "reasonable grounds" that the information was "relevant and

material to an ongoing investigation," "falls well short of the probable cause required for a warrant." Id.

Significantly, although the Court held that government requests for CSLI were generally subject to the warrant requirement under the Fourth Amendment, the Court explicitly recognized that "case-specific exceptions may support a warrantless search of an individual's [CSLI] records under certain circumstances." Id. at 2222. The Court discussed one such "well-recognized exception" for exigent circumstances, suggesting that other well-recognized exceptions also might apply. Id.

In Augustine I, we held that the warrant requirement of art. 14 of the Massachusetts Declaration of Rights applied to a situation where the Commonwealth sought a two-week period of historical CSLI.[7] Augustine I, 467 Mass. at 232.[8] There, we

_____

[7] The term "historical CSLI" refers to "information that has already been generated when the data are requested," as opposed to "prospective CSLI," which refers to "location data that will be generated sometime after the order authorizing its disclosure." Fredericq, 482 Mass. at 77 n.6, citing Augustine I, 467 Mass. at 240 n.24.

[8] We also have held that, "assuming compliance with the requirements of 18 U.S.C. § 2703, the Commonwealth may obtain historical CSLI for a period of six hours or less relating to an identified person's cellular telephone from the cellular service provider without obtaining a search warrant, because such a request does not violate the person's constitutionally protected expectation of privacy." Commonwealth v. Estabrook, 472 Mass. 852, 858 (2015).

remanded the case for a determination whether the written affidavit submitted in support of the Commonwealth's application for an order under 18 U.S.C. § 2703(d) demonstrated probable cause with respect to the records at issue.  Id.

We also have had occasion to apply exceptions to the exclusionary rule under art. 14 in the context of CSLI. See Commonwealth v. Fredericq, 482 Mass. 70, 85 (2019) (Commonwealth failed to show that attenuation doctrine applied to fruits of search of defendant's residence, where defendant's consent to search was "intimately intertwined" with information gleaned from prior warrantless CSLI search); Estabrook, 472 Mass. at 865, 870 (Commonwealth met its burden under "independent source" doctrine to show that CSLI search pursuant to warrant was untainted by prior warrantless search for same information).

The "independent source" doctrine is a well-recognized exception to the exclusionary rule under both the Fourth Amendment and art. 14.  See Murray v. United States, 487 U.S. 533, 537 (1988); Commonwealth v. DeJesus, 439 Mass. 616, 624-625 (2003), and cases cited.  Pursuant to that doctrine, "evidence initially discovered as a consequence of an unlawful search may be admissible if later acquired independently by lawful means untainted by the initial illegality."  DeJesus, supra at 624.

In <u>DeJesus</u> and other recent cases applying the independent source doctrine, we have focused our analysis on whether "the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause . . . apart from [information obtained from the prior illegal search]." <u>DeJesus</u>, 439 Mass. at 625.  See <u>Estabrook</u>, 472 Mass. at 866 (same); <u>Commonwealth</u> v. <u>Tyree</u>, 455 Mass. 676, 692 (2010) (same).[9]  The defendant urges us to conduct a similar analysis in

---

[9] A case currently pending before this court on further appellate review raises the issue whether, in cases such as <u>Estabrook</u> and <u>Commonwealth</u> v. <u>Tyree</u>, 455 Mass. 676 (2010), we have inappropriately omitted an additional, subjective prong of the independent source analysis discussed in <u>Murray</u> v. <u>United States</u>, 487 U.S. 533, 542-543 (1988), namely, whether the officers would have sought the warrant absent information obtained in the initial illegal search.  See Commonwealth <u>vs</u>. Pearson, No. SJC-12930.  The defendant has not raised such an argument here.  Nonetheless, having considered the issue as part of our plenary review under G. L. c. 278, § 33E, we conclude that this case does not require us to resolve the open questions regarding the applicability and contours of such a subjective prong.  Rather, even assuming that such questions would be resolved in the manner most favorable to the defendant, we conclude that there is no substantial likelihood of a miscarriage of justice in this case, where the record provides ample support for the conclusion that the officers would have sought the warrant even in the absence of the CSLI obtained in the initial illegal search.  Among other things, call logs obtained before the illegally obtained CSLI established that the defendant's cell phone had communicated with the victim's cell phone multiple times on the day of her disappearance, and police had information that the defendant, who was married to another woman, was the father of the victim's unborn child.  In the circumstances, "[t]here can be no doubt that the police were committed to an investigation" of the defendant's whereabouts on the night of the murder, and they "would have sought the search warrant with or without [the illegally obtained CSLI]." <u>Commonwealth</u> v. <u>DeJesus</u>, 439 Mass. 616, 627 n.11 (2003).

this case and to conclude that without the tainted CSLI, the warrant obtained in 2014 lacked probable cause.

Here, we proceed from the premise that the 2010 CSLI search violated the requirements of G. L. c. 276 and art. 14 because police did not obtain a search warrant, and the application for the § 2703(d) order was not accompanied by a written affidavit demonstrating probable cause.  See Augustine I, 467 Mass. at 232.  The absence of a written affidavit was not a mere technical violation.  See Commonwealth v. Sheppard, 394 Mass. 381, 388-389 (1985).

Nonetheless, the CSLI need not be suppressed if the 2014 search pursuant to a warrant satisfied the "independent source" doctrine.  As noted, the defendant's sole argument in this regard is that, when stripped of information gleaned from the prior illegal search, the 2014 warrant affidavit lacked probable cause.  We disagree, concluding instead, as the motion judge did, that "[t]he affidavit in support of the 2014 warrant sets out ample probable cause derived from wholly untainted facts known to police before the August 3, 2010 acquisition of the defendant's CSLI."  See Estabrook, 472 Mass. at 870.

As summarized by the motion judge in his decision denying the defendant's motion for a new trial, the untainted facts in the affidavit accompanying the application for the search warrant showed that

"the victim was likely murdered using a class of firearms which included [nine millimeter] handguns; the defendant made public statements implying that he carried a gun with [sixteen] rounds, consistent with a [nine millimeter] Beretta 92FS pistol; firearms records showed that the defendant registered a [nine millimeter] Beretta 92FS pistol which had not been reported missing; the defendant was the likely father of the victim's unborn child, causing financial obligations to the victim and the ire of the defendant's wife; the victim told her friend that the defendant asked her to get an abortion; the defendant and the victim communicated extensively by cellphone throughout July 27, until shortly before the victim's cellphone activity ceased at 10:49 P.M.; and someone, probably not the victim, sent a Facebook message from the victim's account on July 29, after she was reported missing, claiming she was in the hospital after an abortion, although police determined that she was not a patient at any area hospitals."

For all of these reasons, the trial judge did not err in denying the defendant's motion to suppress the defendant's CSLI, and the motion judge did not abuse his discretion in denying the defendant's motion for a new trial and for an evidentiary hearing on this issue.[10]

3.  Ineffective assistance of counsel.  The defendant next contends that his trial counsel provided constitutionally ineffective assistance by failing to move to suppress the fruits

_____

[10] In his decision on the defendant's motion for a new trial, the motion judge also concluded that the disputed CSLI was admissible under the "good faith" exception to the Fourth Amendment.  The Commonwealth urges this court to reach a similar conclusion and to adopt, for the first time, a good faith exception under art. 14.  Because we conclude that the independent source doctrine supports the admissibility of the CSLI, we decline at this time to address the issue of the good faith exception.

of the initial warrantless search of the defendant's CSLI. Ordinarily, to establish ineffective assistance of counsel, a defendant must show that there has been a "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling below that which might be expected from an ordinary fallible lawyer," and that such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). However, where a defendant has been convicted of murder in the first degree, we apply a standard more favorable to the defendant, determining whether counsel's errors, if any, created a substantial likelihood of a miscarriage of justice. See, e.g., Commonwealth v. Simon, 481 Mass. 861, 866-867 (2019), and cases cited. See also Commonwealth v. Wright, 411 Mass. 678, 682 (1992) ("the statutory standard of § 33E is more favorable to a defendant than is the constitutional standard for determining the ineffectiveness of counsel").

Here, the motion judge issued a detailed written decision on the defendant's motion for a new trial, in which he analyzed each category of challenged evidence individually to determine whether it was purged of the taint of the illegal CSLI search.[11]

---

[11] As summarized by the motion judge, the challenged evidence included

This approach was consistent with our observation in Estabrook, 472 Mass. at 860, that the "crucial question" regarding "whether a particular statement must be suppressed as the fruit of [an] initial illegal search of [the defendant's] CSLI is whether that statement has been come at by exploitation of . . . [the illegal search] or instead by means sufficiently distinguishable to be purged of the primary taint" (quotation and citation omitted). As a result of this analysis, the motion judge concluded that only two categories of evidence were tainted by the initial, warrantless CSLI search and thus subject to suppression under the exclusionary rule: (1) the defendant's statements to police during the August 3, 2010, interview after he was confronted with the illegally obtained CSLI; and (2) the defendant's

---

"the trial testimony of Mawande Senene and any references thereto; the trial testimony of Joseph 'J.D.' Lang, and any references thereto; Detective [Marc] Powell's trial testimony referencing Senene and Lang; the defendant's statement to police on August 5, 2010 that he only called his wife one time on July 27, 2010; the entirety of the defendant's statements to police on August 3, 2010; any references to the defendant's [sport utility vehicle], car or motorcycle or items seized therefrom, including cellphones; any references to anything seized from the defendant's home, including cellphones, a towel with red-brown stains, and handgun-related accessories; the testimony of [a] firearm dealer; the testimony of [a] Barnstable town employee who issued the defendant's firing range permit; the defendant's range permit and firearms records; and all evidence that the defendant formerly owned firearms and practiced at a firing range."

statements during the August 5, 2010, interview in response to questions based on the illegally obtained CSLI.

The motion judge then assessed the effect of the tainted evidence on the jury to determine whether trial counsel's failure to move to suppress the evidence deprived the defendant of a substantial ground of defense.  See Saferian, 366 Mass. at 96.  After determining that the statements at issue were "relevant only to consciousness of guilt" and that they were "merely cumulative of other substantial evidence," the motion judge concluded that the statements "had minimal, if any, effects on the jury such that the error was non-prejudicial."

We find no fault with the motion judge's analysis or conclusions in this regard.  And for the same reasons the motion judge concluded that admission of the tainted evidence was nonprejudicial, we conclude that any error in admitting the tainted evidence was unlikely to have influenced the jury's decision for purposes of our § 33E analysis.  See Commonwealth v. Hobbs, 482 Mass. 538, 556 (2019) (no substantial likelihood of miscarriage of justice where testimony at issue was cumulative of other evidence and did not likely influence jury's conclusion); Commonwealth v. Brown, 474 Mass. 576, 586 (2016) (no substantial likelihood of miscarriage of justice where erroneously admitted evidence did not likely influence jury's conclusion).  Here, in light of the substantial evidence against

the defendant -- including the defendant's CSLI, which was admitted properly for the reasons discussed supra, placing the defendant at the victim's hotel, at the commuter lot where the rental vehicle was found, and in the location where the victim's body was discovered, all at relevant times on the night of the murder -- trial counsel's failure to move to suppress the fruits of the initial illegal search did not result in a substantial likelihood of a miscarriage of justice.

4.  Review pursuant to G. L. c. 278, § 33E.  Finally, after conducting a thorough review of the record pursuant to G. L. c. 278, § 33E, we decline to exercise our authority to grant a new trial or to reduce or set aside the jury's verdict of murder in the first degree.

Conclusion.  For the foregoing reasons, we affirm the defendant's convictions and the denial of the defendant's motion for a new trial and for an evidentiary hearing.

So ordered.