COMMONWEALTH vs. HECTOR QUERUBIN.

No. 03-P-370.

Suffolk. November 18, 2003. - March 24, 2004.

Present: DUFFLY, DREBEN, & KAFKER, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Affidavit, Probable cause. *Probable Cause.*

An affidavit supporting the Commonwealth's application for a warrant to search a criminal defendant's residential apartment provided a substantial basis for concluding that a crime had been committed, and that the items described in the warrant were related to the criminal activity and were likely to be found in the defendant's apartment. [698-700]

INDICTMENT found and returned in the Superior Court Department on October 17, 2000.

A pretrial motion to suppress evidence was heard by *Charles T. Spurlock*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Brian J.S. Cullen*, Assistant District Attorney, for the Commonwealth.

*Andrew M. D'Angelo* (*Reinaldo Gonzalez* with him) for the defendant.

DREBEN, J. The Commonwealth appeals from the allowance of the defendant's motion to suppress evidence obtained pursuant to a warrant to search apartment 4, 43 Revere Beach Boulevard in Revere. The search warrant was supported by the affidavit of Mark S. Marron, a Massachusetts State police officer with extensive experience in narcotics investigations. Following execution of the warrant, the defendant and one William Serna were each indicted for, among other things, trafficking in a controlled substance, more than 200 grams of cocaine.

We conclude that facts presented within the four corners of the affidavit provided the magistrate with a substantial basis to determine that a crime had been committed, and that the items described in the warrant[1] were related to the criminal activity and were likely to be found in the place to be searched. See *Commonwealth* v. *O'Day*, 440 Mass. 296, 297-300 (2003). We summarize the facts described in the affidavit.

After setting forth his training and long experience as a narcotics agent, Marron stated that his affidavit (dated August 9, 2000) was submitted in support of an application to search the residence of one William Serna and one Hector Querubin. During the past several months Marron had conversations with a confidential informant who told him that Querubin (hereafter referred to as the defendant) and William Serna worked as a team distributing large quantities of cocaine, and that the informant had seen them distributing cocaine in the past.[2] In May, 2000, the informant told Marron that he had observed a blue Chevrolet bearing Massachusetts registration plate number 86621A "being used" by the defendant and Serna in East Boston.

An investigative check by Marron with the Massachusetts board of probation revealed that both Serna and the defendant had outstanding warrants for distribution of cocaine. Marron had previous information that Serna drove a Dodge Colt bearing Massachusetts registration plate 4335JV, registered to a Tulio Mosquera. It appeared that Mosquera was a false name used by Serna. Mosquera had been arrested in October, 1999, for operating under the influence of alcohol. Marron obtained the Revere police report of the incident and a photograph of Mosquera, who was "one and the same as the photograph of

---

[1]The items described in the warrant were: "Cocaine, a class B controlled substance, and all paraphernalia used in the manufacturing, processing, delivering and distributing of said cocaine. All books, records and documents which are used or intended for use in violation of Chapter 94C of the Massachusetts General Laws; all monies used in the procurement and/or distribution of cocaine and any bank records, safety deposit keys and keys and documents pertaining to occupancy."

[2]Marron stated that he knew the informant and that the informant had provided him with reliable information which had led to the arrest of an individual on an outstanding default warrant for distribution of cocaine. See note 3, *infra*.

Serna." At the time of his arrest in October, 1999, Mosquera gave his address as 43 Revere Beach Boulevard, apartment 5.

On the same day in May, 2000, that he was informed that Serna and the defendant were operating the blue Chevrolet, Marron and two other officers saw the vehicle in East Boston operated by an Hispanic male. They followed the car to 43 Revere Beach Boulevard, a three-story multi-unit apartment building, where Marron saw the driver walk up the front stairs and enter an apartment marked number 4. A check with the registry of motor vehicles indicated that the vehicle was registered to a Teodoro Ospina of 28 Bradstreet Avenue, apartment 4, in Revere.

On Wednesday, August 9, 2000, while Marron and other agents were surveilling 43 Revere Beach Boulevard, they saw the blue Chevrolet parked on an adjacent side street. Marron and the other agents, who had been shown photographs of Serna and the defendant, went to apartment 4 to interview the occupants. After he knocked on the front door, Marron heard footsteps retreating. Officer Michael Cauley, who was positioned at the rear door, called Marron and informed him that two men who looked like Serna and the defendant had attempted to run out the back door and then had run back into the apartment leaving the door open. For safety reasons, Cauley waited for Marron before entering the apartment; when they did enter, the apartment was empty. Marron secured the apartment by locking the back door. From the window, he saw Serna running away.

Serna was apprehended, and just prior to his arrest on the outstanding warrant, he discarded a foil-wrapped ball. The ball was soon retrieved and found to contain approximately thirty grams of white powder believed to be cocaine, an amount Marron stated was consistent with distribution.

One of the officers spoke to a maintenance man at the building and learned that Teodoro Ospina (the same name as the registered owner of the blue Chevrolet) and one Frederico Goulart Leal were renting the apartment. The maintenance man identified a photograph of Serna as a person he had seen on the property. No one by the name of Mosquera lived in apartment 5, which was rented to a white couple.

In the concluding portions of his affidavit, Marron stated that,

based on his training and experience, a seller of cocaine must have on hand a ready supply of drugs, money, drug paraphernalia, and records of his sales. All these items must be kept in close proximity to the drug distributor and are usually kept at his residence. Marron believed that Serna and the defendant were selling cocaine out of the apartment, were using a number of fictitious names, and that items used in the distribution of cocaine would be found in apartment 4, 43 Revere Beach Boulevard.

Contrary to the contentions of the defendant and the motion judge, we think the affidavit presented the magistrate with a substantial basis to determine that there was probable cause to permit the search. "Probable cause exists where 'the facts and circumstances within the magistrate's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that' the object of the search is probably on the . . . premises to be searched at the time the warrant is issued." *Commonwealth* v. *Vynorius*, 369 Mass. 17, 23 (1975), quoting from *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971). As a reviewing court we give "considerable deference to the magistrate's determination of probable cause." *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002). Moreover, even if we were to consider this to be a doubtful or marginal case, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Germain*, 396 Mass. 413, 418 (1985), quoting from *United States* v. *Ventresca*, 380 U.S. 102, 108-109 (1965). See *Commonwealth* v. *Stewart, supra* at 750.

In reaching our conclusion that the magistrate had sufficient facts, we do not rely on information from the confidential informant,[3] and consider only that Marron received a tip to investigate two persons who Marron, through his own efforts, discovered had previously been arrested for distribution of

---

[3]In allowing the motion to suppress, the motion judge concluded that the informant failed both prongs of the test set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), that is, the affidavit did not set forth facts demonstrating the informant's basis of knowledge nor facts upon which the affiant could conclude that the informant was reliable. Our disagreement is with the judge's additional determination: "The

cocaine and an additional tip which led Marron to follow the blue Chevrolet.

The facts and reasonable inferences before the magistrate, attributed to police investigation, were that two men who looked like the defendant and Serna appeared to be the only occupants of an apartment. Each, by reason of the outstanding warrants, had probably previously distributed cocaine. When they heard the arrival of the police, they fled the apartment, Serna taking with him a large quantity of drugs. The amount indicated that Serna and the defendant were selling, rather than merely using, drugs. Serna had previously given a false name when arrested on another charge and had given a false address, signs that he sought to evade identification and to conceal his residence. Such factors have been deemed significant in determining probable cause to search. See *Commonwealth* v. *Farrell*, 14 Mass. App. Ct. 1017, 1018 (1982); *United States* v. *Whitner*, 219 F.3d 289, 298-299 (3d Cir. 2000); 2 LaFave, Search and Seizure § 3.7(d), at 70 (Supp. 2004). That the two men were the only occupants of the apartment on the arrival of police leads to the reasonable inference that even if the apartment were not their residence, the men had control of, or at least unfettered access to, it.[4] The different address given by Ospina on the registration of the blue Chevrolet suggests additional concealment and may, when considered with Serna's use of a fictitious name, also suggest that the names on the lease did not reveal the true lessees. Officer Marron's expertise and experience that drugs and items associated with their sale must be kept near the drug seller, generally his residence, could also be taken into account by the magistrate. See *Commonwealth* v. *Silva*, 440 Mass. 772, 785 (2004).

As recently stated in *Commonwealth* v. *Matias*, 440 Mass. 787, 794 (2004), the required nexus "may be found in the type of crime, the nature of the items sought, and normal inferences as to where such items might be kept by the suspect." See

only confirmation the police made was that the two individuals were seen together on August 9, 2002."

[4]As indicated earlier, Serna (when previously arrested as Mosquera), had given the neighboring apartment as his address, thus concealing both his name and address.

*Commonwealth* v. *Cinelli*, 389 Mass. 197, 213 (1983). We consider that in the circumstances here, the items sought, see note 1, *supra*, were likely to be found in the apartment from which the defendant and Serna had just fled. Therefore, there was sufficient nexus for the magistrate's decision.

Accordingly, the allowance of the motion to suppress is vacated, and an order denying the motion is to enter. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*