NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-407

COMMONWEALTH

vs.

STEPHEN GREANY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Stephen Greany, was charged with possession of a class B controlled substance with intent to distribute (two counts), G. L. c. 94C, § 32A (a), possession of a class D controlled substance with intent to distribute, G. L. c. 94C, § 32C (a), possession of a class E controlled substance, G. L. c. 94C, § 34, possession of ammunition without a firearms identification card, G. L. c. 269, § 10 (h) (1), and larceny from a building (two counts), G. L. c. 266, § 20. He filed a motion to suppress physical evidence, including the drugs and ammunition, obtained during a warrantless search of his home, claiming that he did not voluntarily consent to the search. Following an evidentiary hearing, a judge of the District Court

allowed the motion.  Thereafter, the Commonwealth obtained leave to pursue an interlocutory appeal and a single justice of the Supreme Judicial Court reported the case to us.  We agree with the Commonwealth that the judge erred in finding that the defendant, a former police officer, who signed a written consent form, had not voluntarily consented to a search of his home.  Consequently, the order allowing the motion to suppress must be reversed.

Background.  At the motion hearing, two police officers, Sergeant Jonathan Lagoa and Detective Timothy Soares, testified.  In a handwritten margin endorsement, the judge explicitly credited the testimony of both officers.  We "may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony" (citation omitted).  Commonwealth v. Gentile, 466 Mass. 817, 821 n.5 (2014).  We summarize the testimony presented at the hearing as follows.

In March 2023, the Chief of the New Bedford police department, Paul Oliveira, received information from a city supervisor that the defendant was stealing city property.  At the time, the defendant was a city employee for the facilities department.  He was also a former police officer, who was "on the job around the same time" as Oliveira.

2

On March 8, 2023, Oliveira contacted Lagoa and Soares and relayed the information he had received from the city supervisor. Around 11 A.M. that day, Lagoa set up surveillance outside the defendant's home. He saw the defendant and another city employee arrive in a city truck. The defendant got out of the truck carrying a dartboard and a backpack and entered his home. Five or ten minutes later, the defendant came out without the dartboard and returned to work. Lagoa testified that the dartboard, identified as city property, "was one of the items of interest."

About an hour later, Oliveira, Lagoa, and Soares arrived, in two unmarked cruisers, at the public library where the defendant was working. The trio, wearing plain clothes, approached the defendant in the library parking lot. Soares told the defendant that they received information that he had taken items from city buildings. The defendant explained that the items were being discarded and were supposed to be thrown away.

At some point, Soares read the defendant Miranda warnings, to which the defendant responded that he knew his rights. Soares then explained to the defendant that the officers "could obtain a search warrant for his home based on what was observed by Sergeant Lagoa earlier, or he could sign a Consent to Search Form." The defendant replied that he did not want them to

obtain a search warrant, and that he would rather sign the consent to search form. The conversation was described as "casual," and the defendant was cooperative.

Soares then drove the defendant in an unmarked cruiser to the defendant's home. The defendant sat in the backseat with Lagoa. While in the cruiser, Lagoa went over the instructions for the consent to search form and the defendant signed it. Oliveira drove to the defendant's home separately.

The defendant entered his home first. He unlocked the door, secured his dog and "let [the officers] down to the basement," where he showed them a number of items, including the dartboard, old fire alarm boxes, a Nintendo Wii game system, and some lightbulbs. According to the defendant, these items had been discarded by the city.

While in the basement, the officers saw a safe with a combination lock on the floor by a desk. One of the officers asked the defendant to open the safe. The defendant responded that he did not want to open it because there were photographs inside that he did not want the officers to see. Lagoa testified that he informed the defendant that they could apply for a search warrant for the safe. The defendant then unlocked and opened it. The safe contained suboxone, for which the defendant had no prescription, vials of steroids, and alprazolam pills. In addition, in the same area, the officers found over

4

one thousand grams of marijuana, a scale, .22 caliber ammunition, and a second safe containing $6,400.

As previously noted, although the judge credited the testimony of the officers, she concluded that the defendant's consent to search was not made freely and voluntarily. She further concluded that the search of the first safe (safe) exceeded the scope of his consent. Specifically, she wrote:

> "After hearing on 12/5/23, this [court] credits the testimony of Sgt. Lagoa (20 yrs NBPD) and Det. Soares (11 yrs NBPD). This [court] finds the information used to search the [defendant] and his property was lacking in detail. Chief Oliveira (who did not testify) called these officers stating [defendant] was suspected of stealing city property. The time frame and specifics about what property was not provided. The basis of the search relied entirely on totem pole hearsay.[1] Based on the improper basis/lack of consent for the search the consent was not voluntary since the NBPD used the threat of seeking a search warrant if the [defendant] did not give consent. Additionally, the NBPD exceeded the scope of the search by searching the safe. This [court] relies on Comm v. Ortiz, 478 Mass. 820 (2018). This motion to suppress is hereby Allowed."

Discussion. "[I]n reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" (citation omitted). Commonwealth v. Tremblay, 480 Mass. 645, 652 (2018). "The determination of the weight and credibility of the

---

[1] The judge used the expression "totem pole hearsay." The better practice is to use phrasing that is inclusive and legally precise. The Mass. G. Evid. § 805 (2024) uses hearsay within hearsay.

testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court" (citation omitted). Commonwealth v. Gonzalez, 487 Mass. 661, 668 (2021). "At the same time, we make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found" (quotation and citation omitted). Id.

1. Voluntariness of the defendant's consent to search his home. The Commonwealth first argues that the judge erred by concluding that the defendant did not voluntarily consent to the search because "the basis of the search relied entirely on" hearsay within hearsay and because the defendant was threatened with the prospect that the police would obtain a search warrant.

"A search may be conducted without a warrant provided the search is undertaken with the free and voluntary consent of a person with the authority to give that consent." Commonwealth v. Fencher, 95 Mass. App. Ct. 618, 621 (2019). "The Commonwealth bears the burden of proving that consent was freely and voluntarily given" (citation omitted). Commonwealth v. Soto-Suazo, 100 Mass. App. Ct. 460, 467 (2021). "Consent is free and voluntary where it is 'unfettered by coercion, express or implied,' and must be more than mere 'acquiescence to a claim of lawful authority'" (citation omitted). Id. "Whether consent is free and voluntary is to be determined from all of the

6

circumstances" (citation omitted).  Id.  "Because a finding of voluntariness is a question of fact, it should not be reversed absent clear error by the judge."  Commonwealth v. Carr, 458 Mass. 295, 303 (2010).

To begin with, it matters not that the investigation was initiated by a city employee who alleged that the defendant was stealing city property.  Here, the judge concluded that the investigation was somehow unfounded as it stemmed from this hearsay within hearsay.  However, the manner in which the investigation commenced is simply not relevant to the question whether the defendant's consent was voluntary.  Furthermore, any deficiencies or lack of detail in the city employee's information was rectified once Lagoa observed the defendant carrying city property into his house.

Next, based on the uncontroverted testimony of the officers, the judge erred in concluding that the defendant's consent was not voluntary because the police "used the threat of seeking a search warrant."  We recognize that the judge is in the best position to assess the weight and credibility of the testimony given at the motion hearing.  However, the evidence did not support the judge's finding that the defendant was threatened, or, more importantly, that the defendant, a former police officer, was coerced to provide consent based on any threat.

7

First, the officers' testimony (credited by the judge) established that the conversations with the defendant, were "very casual."  In this sense, the officers' tone was not threatening.

Second, while it is undisputed that the police officers told the defendant that they "could" obtain a warrant or, alternatively, he "could" consent to a search of his home, this statement by itself was not sufficient to support the judge's finding that the defendant's consent was involuntary.  See Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 93 (2010) ("mere mention of the possibility of obtaining a search warrant in lieu of obtaining . . . consent [is] insufficient to rob the consent of its validity" [citation omitted]).  Most importantly, because the defendant was a former police officer, he would have known both that he could refuse to provide consent to search his home and that, if he did so, the police could apply for and obtain a warrant.  See Commonwealth v. Egan, 12 Mass. App. Ct. 658, 663 (1981) (defendant, an experienced law enforcement officer, "would have known that he could choose to resist [the officer's] request to search his car trunk" and that "[h]is cooperative conduct obviated the need for a search warrant").  Also, because the police officers had informed him that they had received reports that he had taken property from city buildings, and he had admitted that he had done so, he would have

8

understood that the officers had probable cause to obtain a warrant. See 4 W.R. LaFave, Search and Seizure § 8.2(c) (6th ed. 2020) ("it may generally be said that a threat to obtain a search warrant is . . . likely not to affect the validity of the consent if the police had probable cause upon which a warrant could issue"); id. at n. 122 (citing authorities).

Finally, in signing the consent to search form, the defendant acknowledged that he was not subjected to threats of any kind.[2] Collectively, these undisputed facts satisfied the Commonwealth's burden of proving that the defendant's consent to search was voluntary.

The defendant's remaining arguments in support of the allowance of his motion to suppress are unavailing. First, even if the defendant was under arrest when he consented to the search, that fact did not invalidate his consent. See Commonwealth v. Franco, 419 Mass. 635, 642 (1995) ("fact that the defendant consented to the search while under arrest does not preclude a finding that the consent was voluntarily given"). Second, we are not persuaded that the involvement of the chief of police and two "high-ranking" officers, without more, was

---

[2] We note that in his affidavit submitted in support of his motion to suppress, the defendant stated that the officers told him that "they would be getting a search warrant for my property" but he did not aver that he had been threatened or coerced. Without further elaboration he just says he "did not voluntarily consent to the search of [his] property."

9

coercive.  Although the defendant and the chief worked as police officers around the same time and may have known each other, the evidence suggests nothing else, good or bad, about their relationship.  Furthermore, the evidence credited by the motion judge does not suggest that the defendant was uncomfortable with these particular officers' involvement.  Instead, as noted, the defendant engaged in casual conversation with the officers and was compliant and cooperative.

2.  Scope of the defendant's consent.  The judge concluded that, even if the defendant had consented to the search of his home, the officers exceeded the scope of that consent when they searched the safe.  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (quotation and citation omitted).  Commonwealth v. Ortiz, 478 Mass. 820, 824 (2018).

Here, the defendant signed a consent form for the search of his home, which expressly permitted the officers "to conduct a complete search of the premises and property, including all building [sic] and vehicles, both inside and outside the property."  Moreover, the defendant "let [the officers] down to the basement" of his home, where the safe was located.  Under these circumstances, an objectively reasonable person would have

10

known that the safe was within the scope of the defendant's consent to search the home.[3,4]

                         Order allowing defendant's
                            motion to suppress
                            reversed.

                         By the Court (Vuono, Henry &
                            Wood, JJ.[5]),

                         _Paul Little_

                         Clerk

Entered:  September 4, 2025.

---

[3] The defendant argues that even if the scope of the consent to search included the safe, he withdrew his consent by saying that he did not want to open the safe because there were photographs inside that he did not want the officers to see. This argument was not raised below, the judge made no findings on it, and we do not reach it.

[4] The defendant's request to file a motion for costs pursuant to Mass. R. Crim. P. 15 (d), as amended, 476 Mass. 1501 (2017), is allowed.  The defendant may do so within thirty days of the issuance of the rescript.  See Commonwealth v. Ennis, 441 Mass. 718, 720 (2004); Commonwealth v. Santos, 99 Mass. App. Ct. 360, 365 (2021).

[5] The panelists are listed in order of seniority.

11